IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| KEITH M. COLE,<br>     *Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION No. 1:20-cv-15 |
| BOBBY LUMPKIN, *et al.*,<br>     *Defendants.* | §<br>§<br>§ | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Texas Department of Criminal Justice, Bryan Collier, and Bobby Lumpkin (collectively, "Defendants"), file this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of their motion, Defendants respectfully offer the following:

## I.  STATEMENT OF THE CASE

Plaintiff Keith Cole is an inmate confined to the custody of Texas Department of Criminal Justice ("TDCJ"). Cole brings suit pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"). ECF No. 1. Specifically, Cole alleges that his religion requires him to abstain from pork but consume other animal meats. *Id.* Cole seeks injunctive relief. *Id.*

In response to Cole's complaint, Defendants filed an answer denying that Cole was entitled to any relief and asserting all applicable immunities. ECF Nos. 25, 27.

## II.  MOTION FOR SUMMARY JUDGMENT

Defendants move the Court for entry of summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56. There is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

### III.  ISSUES PRESENTED

- Can Cole maintain a claim for injunctive relief against TDCJ?

- Can Cole show that TDCJ's menu selection plan substantially burdens the free exercise of his religion or that TDCJ meal selection plan is not the least restrictive means of furthering its compelling interests?

### IV.  SUMMARY JUDGMENT EVIDENCE

**Exhibit A:**  Relevant Food Service Procedure Policies, with business records affidavit;

**Exhibit B:**  TDCJ Chaplaincy Manual, Policy 03.01 (rev. 5), "Religious Diet Plans," dated January 2020, with business records affidavit;

**Exhibit C:**  Cole's Commissary Purchase History from January 13, 2020, to March 1, 2022, with business records affidavit;

**Exhibit D:**  Cole's Trust Fund Transaction History from January 9, 2020, to March 1 2022, with business records affidavit.

### V.  STATEMENT OF FACTS

The Texas Department of Criminal Justice ("TDCJ") offers inmates the opportunity to worship and practice religion to the fullest extent possible under budgetary and security challenges faced by the reality of incarceration. Bryan Collier is Executive Director of TDCJ and Bobby Lumpkin is the Director of TDCJ Correctional Intuitions Division. ECF Nos. 1, 25, 27.

Cole is currently housed at the Stiles Unit, in Beaumont Texas. *See* ECF No. 34 at 4. Cole alleges that he is a member of the Baha'i faith. ECF No. 1 at 7. According to Cole, his faith requires him to follow the tenants set forth in the Qur'an, which require him to abstaining from eating pork, and the tenants set forth in the Torah, which require him to consume meat. *Id.*

TDCJ allows inmates to follow dietary preferences or restrictions based on his or her designated faith preference by selecting an appropriate food tray from the menu selection plan. *See* Exhibit A, Exhibit B. Like any inmate at TDCJ, Cole has access to three different menu selection

2

options—a regular tray, a meat-free tray, and a pork-free tray. *Id.*

Cole states that he always selects the pork-free tray option as part of the menu selection plan, but complains that at meals when pork is served, he is given vegetarian replacement for the pork rather than non-pork meat. ECF No. 1 at 7.

In addition to the food served through the menu selection plan, Cole may purchase meat and other food items through the unit commissary with money in his trust account. *See* ECF No. 1 at 8; Exhibit C & D. Cole's commissary purchase records show that in the last two years he has consistently been able to purchase a wide variety of food, including meat. Exhibit C. Cole's inmate banking records also show that for the last two years he regularly receives deposits, totaling thousands of dollars annually. Exhibit D.

## VI. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." There is no genuine issue of material fact "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (stating that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact"). "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (citing *Anderson*, 477 U.S. at 248). A party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).

## VII.  ARGUMENT

**A.    Cole's claim for injunctive relief against TDCJ is barred by the Eleventh Amendment and does not fall under the *Ex parte Young* exception.**

In this suit, Cole seeks injunctive relief regarding his claims arising under RLUIPA against TDCJ, Collier, and Lumpkin. Generally, unless a State consents to suit or Congress exercises its power to override a State's immunity, the Eleventh Amendment to the United States Constitution bars suits against a State in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); s*ee Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd sub. nom. Sossamon v. Texas*, 131 S. Ct. 1651 (2011) (finding no abrogation or waiver of sovereign immunity under RLUIPA).

However, under the *Ex parte Young* exception, Eleventh Amendment immunity may be overcome when the suit "seeks prospective, injunctive relief from a state actor, *in [his] official capacity*, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (emphasis added); *see also Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604–05 (5th Cir. 2008) (finding that sovereign immunity is subject to an established exception when it comes to *state officers*…and that a federal court, consistent with the Eleventh Amendment, can enjoin *state officials*).

While the *Ex parte Young* doctrine provides a limited exception to Eleventh Amendment immunity, it does so for official capacity claims against state actors. *See Edelman v. Jordan*, 415 U.S. 651, 664–68 (1974) (providing a general overview of the doctrine). While Cole may be able to state a claim for injunctive relief against Collier or Lumpkin, Cole's RLUIPA claim for injunctive relief against TDCJ should be dismissed as a matter of law because those claims are barred by the Eleventh Amendment and not subject to the *Ex parte Young* exception. As such, TDCJ is entitled to summary judgment on all claims against it.

**B.     Cole cannot raise a genuine issue of material fact as to his RLUIPA claims; therefore Defendants are entitled to summary judgment.**

No genuine issue of material fact exists regarding whether Cole's rights under RLUIPA were violated, therefore Defendants are entitled to summary judgment. RLUIPA provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). However, not all substantial burdens are prohibited. RLUIPA further provides that even if such a substantial burden exists, the intrusion is excused if the government demonstrates that imposition of the burden (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest. *Id.*

   **1. Cole has not met his burden of demonstrating a substantial burden on his religious beliefs.**

In his original complaint, Cole claims that the pork-free diet TDCJ offers denies him access to meat at the meals when pork is served. *See generally* ECF No. 1. Cole, however, cannot show that TDCJ meat-free meals substantially burdens his religious exercise.

Initially, it falls to Cole to prove that the government practice complained of imposes a "substantial burden" on his religious exercise, which requires this Court to answer two questions: (1) is the burdened activity "religious exercise" and, if so, (2) is the burden "substantial"? *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004). A government action or regulation creates a "substantial burden"[1] on a religious exercise only if it truly pressures the adherent to significantly modify his religious

---

[1] The Eleventh Circuit states in *Smith v. Governor for Alabama*, "If the word 'substantial' in the statutory phrase 'substantial burden,' 42 U.S.C. § 2000cc–1(a), is to retain any meaning, it must, at a minimum, be construed as requiring something more than solely the denial of a request that is sincere. An alternate approach ... would result in the word 'substantial' in § 2000cc–1(a) as being mere surplusage, since every governmental action denying a requested item to be used in religious observance would give rise to a *prima facie* RLUIPA claim. *Smith v. Governor for Alabama*, 562 F. App'x 806, 813 (11th Cir. 2014).

5

behavior and significantly violate his religious beliefs. *Id.* at 570.

> [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Id.* "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Sossamon v. The Lone Star State of Texas*, 560 F.3d 316, 332 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, 131 S. Ct. 1651 (2011) (citing *Adkins*, 393 F.3d 567). In considering whether a practice or policy substantially burdens an inmate's sincere religious beliefs, the court may consider whether the inmate has alternative means of exercising his religion. *See, e.g.*, *Newby v. Quarterman*, 325 F. App'x 345, 351 (5th Cir. 2009).

Cole must therefore prove that that the times when vegetarian meals are served to him it truly pressures him to significantly modify his religious behavior and significantly violate his religious beliefs. He cannot do so.

Here, Cole alleges that he is a member of the Baha'i faith and follows tenants set forth in the Qur'an and Torah, which require him to abstain from eating pork but compel him to consume other meat. ECF No. 1 at 7. Cole claims that when he selects a pork-free tray, he is given vegetarian replacement for pork at a third of his lunch and dinner meals. ECF No. 1 at 7. Cole alleges he spends his own money to purchase meat to eat with his meal and claims that this has cost him hundreds of dollars over the years. *Id.* at 7-8.

As acknowledged in his complaint, Cole may purchase non-pork meat through the commissary to supplement any meat-free meal served by TDCJ. *Id.* at 8. Indeed, Cole's commissary purchase records show that he can purchase a wide variety of food, including non-pork meat such as beef,

6

chicken and fish. *See* Exhibit C. Cole's inmate banking records show that he regularly receives deposits into his account in sufficient amounts to purchase any foods of his choice. *See* Exhibit D.

Cole's purchase history shows that he has sufficient money budgeted to spend not only on meat items, but also on additional vegetarian items such as rice, ramen, tortillas, cookies, coffee, soda, crackers, chips, peanut butter, ice cream, and cheese. *See* Exhibit C. The meat items chosen by Cole included $0.95 mackerel fillets, $1.70 beef sausages, $1.45 chicken chili, and $3.50 roast beef and gravy. *Id.* These items are similarly priced and sometimes less expensive than the vegetarian items such as $1.15 vanilla crème cookies, $1.55 tortilla chips, $1.60 spicy snack mix, $2.25 ice cream, $0.95 Snickers candy bar and $2.40 peanut butter. *Id.*

If Cole's sincerely held religious beliefs require the consumption of meat at each meal, his religious practices can be satisfied through purchase of additional food through the unit's commissary. While this may impose a financial cost on Cole, it is not a substantial burden that would require him to violate his beliefs or deny him a reasonable opportunity to practice his religion. *See Patal v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) (finding that an inmate option of purchasing commissary food to substitute meals served was not a substantial burden), *see also Muhammad v. Wiles,* 2022 WL 73047 at *1-2 (5th Cir. Jan. 7, 2022) (denying rehearing and affirming district court's denial of injunctive relief where jail's menu did not meet inmate's religious preferences and defendants showed compelling interest in refusing to provide an individualized diet).

In Cole's case, while he alleges that over the years he has spent hundreds of dollars on meat, his financial records show he regularly receives deposits and has access to thousands of dollars annually. ECF No. 1 at 8, Ex. C, Ex. D. Even while spending some of his money on meat, Cole is still able to have access to other commissary goods not associated with his religious expression. *Id.* More fundamentally, Cole cannot demonstrate that he has been pressured to violate his religious beliefs by going without meat or that he has been denied the opportunity to eat the particular food his

religious beliefs require. To the extent that Cole complains about the quality or variety of meals provided, or that he does not want or like the vegetarian food available to him, this amounts to no more than a personal preference and is not a substantial burden on his religious exercise.

Because Cole cannot carry his burden of demonstrating a substantial burden on his religious exercise, his claims under RLUIPA fail and should be dismissed as a matter of law.

### 2. TDCJ has a compelling governmental interest in the challenged practices and policies and is using the least restrictive means in furthering those interests.

Even if Cole could satisfy his burden of demonstrating that he faces a substantial burden on his religious exercise, TDCJ's menu selection plan is the least restrictive means to allow inmates to select a meal that suits their religious diets while furthering its compelling governmental interests in controlling costs related to food service.

If an inmate can demonstrate that the government has imposed a substantial burden on his religious exercise, then the burden shifts to the government "to show that its action or policy is the least restrictive means of furthering a compelling interest." *Chance v. Texas Dep't of Criminal Justice*, 730 F.3d 404, 410 (5th Cir. 2013); *see also* 42 U.S.C. § 2000cc-1 (same). "In making this assessment, [courts] must give due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security[,] and discipline, consistent with consideration of costs and limited resources." *Brown v. Collier*, 929 F.3d 218, 229 (5th Cir. 2019) (internal quotation marks omitted).

The Fifth Circuit has already recognized that TDCJ has compelling institutional interests in: promoting and maintaining unit safety, security, good order and discipline; controlling costs; and protecting the general public. *See e.g.*, *Ali v. Stephens*, 822 F.3d 776, 786 (5th Cir. 2016) (TDCJ has "a compelling interest in staunching the flow of contraband into and within its facilities"); *see Cutter v. Wilkinson*, 544 U.S. at 722; *see also Chance v. Tex. Dep't of Crim. Justice*, 730 F.3d 404 (5th Cir. 2013) ("As

an initial matter, TDCJ's duty to protect the health and safety of its prisoner population is indisputably an interest of the highest order."); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 332 (5th Cir. 2009) ("Effective and affordable prison security at the chapel is a compelling governmental interest."); *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) ("RLUIPA, in other words, is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs.").

To meet their burden of proof on this prong, Defendants need only "'take the unremarkable step of providing an explanation for the policy's restrictions that takes into account [its] institutional need to maintain good order, security, and discipline or to control costs.'" *Smith v. Ozmint*, 578 F.3d 246, 252 (4th Cir. 2009) (quoting *Lovelace v. Lee*, 472 F.3d 174, 190 (4th Cir. 2006)). "Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (RLUIPA will be applied "in an appropriately balanced way, with particular sensitivity to security concerns").

Once Defendants point to a compelling state interest, the final part of the RLUIPA analysis is whether the challenged regulation is the least restrictive means of furthering the compelling government interest. 42 U.S.C. § 2000cc-1(a)(2). "The phrase 'least restrictive means' has its plain meaning." *Sossamon*, 560 F.3d at 332. But, "[s]hould inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Cutter*, 544 U.S. at 726.

Defendants assert that the challenged meal selection plan is the least restrictive means accommodating various dietary needs of the entire inmate population in light of TDCJ's compelling governmental interest in controlling its resources and costs of food service. Recognizing that RLUIPA "is not meant to elevate accommodation of religious observances over the institutional need . . . to

9

control costs," the Supreme Court held that "controlling costs . . . involves compelling governmental interests" for the purposes of RLUIPA litigation. *Cutter*, 544 U.S. at 723. As the Supreme Court has explained, RLUIPA must be applied in a manner "*consistent with consideration of costs and limited resources*," because to do otherwise would impermissibly allow accommodation of faith to trump other significant interests, in violation of the Establishment Clause of the First Amendment. *Id.* at 722–23, 726 (citing *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985)) (emphasis added).

The Fifth Circuit has specified that controlling costs is a compelling state interest. *DeMoss v. Crain*, 636 F.3d 145, 154 (5th Cir. 2011). In *Baranowski*, the Fifth Circuit recognized that controlling costs was a compelling state interest that would permit a prison system to have restrictions in place that imposed a significant burden on the free exercise of religion because the compelling state interest was so great. *See Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007). "[C]ost reduction, as a general matter, is unquestionably a compelling interest of TDCJ." *Moussazedeh v. TDCJ*, 703 F.3d 781, 795 (2012).

Although RLUIPA requires a "fact-specific inquiry that takes into account the special circumstances of the individual prisoner and prison," the Fifth Circuit has recognized that prison policies have repercussions across the entire inmate population. *See Chance v. TDCJ*, 730 F.3d 404, 411, 416 (5th Cir. 2013) ("Although prisons cannot blindly assert that an exception for one person would require exceptions for everyone, we have recognized the validity of such concerns where experience or evidence warrants that conclusion."); *see also Baranowski*, 486 F.3d at 125.

The meal selection plan options provided to all offenders at TDCJ (regular, pork-free, and meat free) are currently available for every inmate, regardless of religious or dietary preference. Ex. A. This policy allows for flexibility of dietary needs of each inmate, while reducing the cost of accommodating each idiosyncratic diet for the thousands of inmates at each unit.[2] In addition to the

---

[2] The Stiles Unit, where Cole is currently housed, has a capacity to house 2,981 inmates. *See*

10

meal tray options provided to all inmates, additional food is available to supplement an inmate's diet through the unit commissary. As previous shown, non-pork meat items are available for purchase at the unit commissary to Cole and Cole has purchased those items. *See* Ex. C.

Cole argues that TDCJ should provide an additional diet specific to him. This would require TDCJ to ensure that non-pork meat is available and ready to be served to Cole at each meal service, adding additional cost to the operation of any unit where Cole is housed. However, this position is antithetical to previous findings in the Fifth Circuit and Texas federal courts. These courts have found that prisons officials are not required to coordinate a new program for food service to accommodate a single inmate's specific religious dietary requirements. *See Jones v. Shabazz*, 352 F. App'x 910, 916 (5th Cir. 2009) (requiring TDCJ to specially accommodate Nations of Islam adherents and every one of the other 140 religious sects in the TDCJ would create undue burdens on prison administration)); *see also Thunderhorse v. Pierce*, 364 F. App'x 141 at *8 (5th Cir. 2010) (Native American adherent wanted traditional Native American food for his holy days); *Royal v. Grounds*, No. W-10-CA-136, 2011 WL 13183096, at *5 (W.D. Tex. Sept. 30, 2011) (inmate alleged he was a Vampire High priest and follower of vampirism wanted red foods to break his fasts; such as watermelon, tomatoes, strawberries, etc.).

As in the previous cases that examined similar claims, TDCJ's menu selection plan is the least restrictive means to allow inmates to select a meal that suits their religious diets while furthering its compelling governmental interests in controlling costs related to food service for the thousands of inmates at each unit.

Because no genuine issue of material fact exists regarding whether Cole's rights under RLUIPA were violated, Defendants are entitled to summary judgment on Cole's RLUIPA claim. As Cole concedes, he is able to consume the meat-free meals as part of his religious practice, and as the evidence shows, Cole is able to fulfill his religious obligations by purchasing additional meat at the

---

https://www.tdcj.texas.gov/unit_directory/st.html.

commissary to supplement his diet.

## CONCLUSION

Defendants pray that their motion for summary judgment be granted and that this case be dismissed with prejudice. Defendants further pray that they be awarded any other relief which this Court deems is just and proper.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

*/s/ Jeanine M. Coggeshall*
**JEANINE M. COGGESHALL**
Assistant Attorney General
Texas State Bar No. 24083162
Jeanine.Coggeshall@oag.texas.gov

**OFFICE OF THE ATTORNEY GENERAL**
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 370-9814 (Fax)

**ATTORNEYS FOR DEFENDANTS**

**NOTICE OF ELECTRONIC FILING**

I, **Jeanine M. Coggeshall**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the United States District Court for the Eastern District of Texas, on April 6, 2022.

*/s/ Jeanine M. Coggeshall*
**JEANINE M. COGGESHALL**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **Jeanine M. Coggeshall**, Assistant Attorney General of Texas, certify that a true copy of the above has been served by placing it in United States mail, postage prepaid, on April 6, 2022, addressed to:

Keith M. Cole, TDCJ No. 728748     *Via CM/RRR No. 7020 1290 0000 7444 8365*
Stiles Unit
3060 FM 3514
Beaumont, Texas 77705-7635
**Plaintiff** *Pro se*

*/s/ Jeanine M. Coggeshall*
**JEANINE M. COGGESHALL**
Assistant Attorney General